**SO ORDERED.**

**SIGNED this 28 day of October, 2010.**



_____
         **Stephani W. Humrickhouse**
         **United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| WILLIAM J. HERING and DEBORAH H. HERING | 07-03512-8-JRL |
|     DEBTORS | |
| | |
| WILLIAM J. HERING and DEBORAH H. HERING, | ADVERSARY PROCEEDING NO. |
| | S-09-00113-8-AP |
|     Plaintiffs, | |
|     v. | |
| SHAUN HAUN and DAVID LEE, individually and as partners doing business as FIVE SEASONS FARM; and FIVE SEASONS FARM, a partnership, | |
|     Defendants. | |

### MEMORANDUM OPINION

The trial of this adversary proceeding was held in Raleigh, North Carolina, on June 8 and August 3, 2010. After the close of the plaintiffs' evidence, the defendants moved for a directed verdict, which was denied, and the defendants proceeded with their evidence. For the reasons that

follow, all claims against defendant David Lee will be dismissed and judgment will be entered in favor of the defendants.

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(O), which this court may hear and determine.

William J. Hering and Deborah H. Hering filed a petition for relief under chapter 12 of the Bankruptcy Code on September 21, 2007, and filed this adversary proceeding on June 5, 2009. Plaintiffs sought to recover approximately $69,673.25 from the defendants, Shaun Haun, David Lee, and Five Seasons Farm, alleging that the defendants failed to pay in full for agricultural products purchased on credit from the plaintiffs during a series of growing seasons.[1] William H. Hering operates Hering Farms with assistance from his brother, Dwayne Hering (collectively, "the Herings"). In 2006, the Herings met Shaun Haun of Five Seasons Farm. Mr. Haun sought a grower for certain Asian crops, including napa cabbage and radishes. For both the spring and fall growing seasons of 2006, the parties agreed that the Herings would grow 18-20 acres of Asian crops, for which Haun would pay a fixed price of $10 per box, with each party paying their own expenses. Haun made fertilizing suggestions, provided boxes after the Herings' supply was depleted, arranged for trucks to transport the crops, and arranged for the sale of the crops. The Herings provided the

---

[1]The adversary proceeding was commenced against Mr. Shaun Haun, whom the defendants refer to as Shaun Hann and Shaun Han. The court notes the discrepancy but considers it to be of little import, given that there were no questions of improper service of process. In the interest of consistency, the court adopts the Haun spelling, which appears in the caption of the majority of the documents filed in this proceeding, including documents filed by the defendants.

acreage, labor, and fertilizer, as well as temperature-controlled storage for the crops. Haun also provided some funds up front to start the crops as a showing of good faith. The parties agree that the Herings have been paid in full for crops grown for the defendants during both 2006 seasons.

The parties differ as to the relevant facts after the 2006 growing seasons. According to the Herings, Haun advised them that he was bringing his brother-in-law, David Lee, into his business as a partner. Haun further arranged with the Herings to place a camper on Hering Farms, which would serve as a residence for Haun and Lee and would allow them to manage the crop-growing process on a day-to-day basis. Lee arrived shortly thereafter. Upon Haun's proposal to expand the types of Asian crops grown and acreage covered for 2007, the Herings proposed changes to the prior agreement; specifically, starting in 2007, their relative duties would stay the same, but expenses would be shared equally and the remaining profit would be split equally between Hering Farms and Five Seasons Farm. Five Seasons would make occasional or periodic payments to Hering Farms to cover expenses during the season, and the parties would "settle up" sixty days after the last invoice for the season had been issued by Hering Farms. Further, instead of a fixed price for the season, the crop price would be the market price at the time the crops were "sold" to Five Seasons Farm. The Herings obtained the market price from Haun or Lee each day that the crops were shipped, made a note of the price provided that day, and based their invoices on that price. In spring of 2007, Haun left the country and Lee remained on Hering Farms, managing the growing process for the crops subject to the agreement and acting as a liaison between Haun and the Herings.

The defendants, however, dispute the plaintiffs' rendition of the agreement between the parties as to the pricing of the crops and the payment arrangement. They contend that beginning with the 2007 growing seasons, the parties entered into a joint venture agreement whereby they

3

agreed to split all expenses and profits on a fifty-fifty basis. The market price of the crops when shipped to the wholesalers was given to the Herings when requested, but this price was only a rough indication of the actual final sales price, which ultimately was paid by a third-party buyer. The product was shipped to wholesalers in New York, the District of Columbia, and Toronto, who in turn sold the crops to retailers within three to five days. With regard to the actual price of the crops sold, on which Haun determined Five Seasons' payments to the Herings, Haun offered inconsistent testimony as to the basis for that price. Haun testified at one point that the price was set by the wholesalers at the time they received the crops from Haun, but also testified that the price was set by the wholesalers at the time they sold the crops to retailers.

Based on their understanding of the payment arrangement, the Herings contend they received partial, but not complete, payment from Five Seasons for the spring 2007 season. When attempting to reconcile costs and profits, a pricing discrepancy arose: the Herings noted that although they had been given a certain market price for the crops at the time the crops were loaded for transport by Lee (and sometimes Haun, before he left the country), Haun's "breakdown sheet" at the end of the season often indicated that the crops sold for much less. As a result, the Herings did not receive as much money as expected from Five Seasons for the spring 2007 crop. Nevertheless, the parties went forward with the fall 2007 season, for which the Herings were paid in accordance with their expectations. In 2008, with the Herings maintaining that a balance was still outstanding from the spring 2007 season, they agreed to plant a smaller amount of crops, and advised the defendants that if payment was not received as agreed, the Herings would end their relationship with Five Seasons. The Herings contend that Lee told them that he personally would ensure that they would be paid in accordance with the agreement. When the Herings did not receive any payment from Five Seasons

for 2008, they asked Lee to leave Hering Farms. It is the plaintiffs' position that Five Seasons Farm, as well as its individual partners, Haun and Lee, still owe Hering Farms $69,673.25, representing the balance due for the spring 2007 season, as well as all monies due for 2008.[2]

The defendants, as a preliminary matter, deny that David Lee was a partner in Five Seasons Farm, and thus dispute his liability for any claims against Five Seasons Farm. Haun contends that Lee was merely helping him with the farming venture as repayment for monies loaned to Lee by Haun years ago. Lee therefore maintains that plaintiffs' claims against him should be dismissed. In addition, the defendants contend that they do not owe anything to the Herings; rather, the parties simply had a failed business relationship, which ended upon mutual agreement when costs of crop production began to exceed profits. In the alternative, defendants contend that any alleged liability arising out of the agreement between the parties is precluded by the North Carolina Statute of Frauds, in that an oral agreement for the sale of goods in excess of $500 is not an enforceable contract.

Notwithstanding the defendants' varied testimony as to how the actual sales price was determined, the defendants also maintain that because the price was not determined until some actual ultimate sale of the crops, to either a wholesaler, retailer or consumer, neither Haun nor Lee *could* have provided the sales price to the Herings at the time of shipment. Instead, Haun calculated the Herings' share of the profits based on monies received for the crops, rather than the estimated market price on the day the crops were shipped from Hering Farms.

---

[2] At trial, the plaintiffs advised the court that they had waived any claims for any charges included in this amount for electric, garbage, phone, and internet services that allegedly were not paid when Lee left Hering Farms, and instead sought only the value of the crops transferred to the defendants.

Finally, Haun and Lee assert that they never received any invoices from Hering Farms and had not seen the invoices introduced into evidence until the hearing; rather, the first request for payment was a letter from William Hering dated February 19, 2009, in which Hering demanded $69,227.60 for "agreed upon prices on melons, cabbage and other vegetables that Five Seasons Farm received from Hering Farms." The letter indicated that if no response was received within twenty days, Hering Farms would consider filing suit for the money owed plus interest, attorney's fees, and other charges. The defendants therefore contend that they have no remaining liability to the plaintiffs, and that even if payments were due under the agreement, enforcement of the agreement is precluded by the North Carolina Statute of Frauds.

**DISCUSSION**

1. <u>Partnership</u>

The plaintiffs brought this adversary proceeding against the individual defendants "as partners doing business as Five Seasons Farm." No basis for defendant Lee's liability is asserted other than his alleged partnership status in Five Seasons Farm. The burden was on the plaintiff, at trial, to establish Lee's partnership status. <u>Volkman v. DP Assocs.</u>, 268 S.E.2d 265, 267 (N.C. Ct. App. 1980).

Bankruptcy courts look to state law to determine whether a partnership exists. <u>See, e.g.</u>, <u>In re Brokers, Inc.</u>, 363 B.R. 458, 468-72 (Bankr. M.D.N.C. 2007). North Carolina General Statute § 59-36(a) defines a partnership as "an association of two or more persons to carry on as co-owners of a business for profit." A key criteria for the existence of a partnership is the sharing of profits and losses. <u>Wilder v. Hobson</u>, 398 S.E.2d 625, 627 (N.C. Ct. App.1990), <u>citing</u> <u>Sturm v. Goss</u>, 368 S.E.2d 399 (N.C. Ct. App.1988).

The evidence presented does not support a finding that a partnership existed between the individual defendants. Haun and Lee testified that Haun was the sole owner of Five Seasons Farm and there was no evidence that Haun and Lee shared expenses or profits or jointly held property; in fact, Haun and Lee affirmatively denied the same. The undisputed testimony was that Lee played no role in the negotiation of any agreement between the parties or in the setting of any price for the crops, that Lee had no check writing authority, and that no partnership return had been filed or K-1 prepared. Furthermore, the uncontradicted testimony of the individual defendants indicated that Lee held sole title of the camper and car used by Lee and Haun when onsite in North Carolina, and that Lee was reimbursed for any expenses he incurred on behalf of Five Seasons Farm.

On the first day of the trial, plaintiff William Hering's brother, Dwayne Hering, testified as follows: "I was there [in June of 2008] when [Lee] said me and Shaun is partners in this and we're working together. If nothing else I promise you that I'll personally pay you." Lee denied making that statement. Having considered the testimony, the court is not persuaded that Lee, when it was apparent that the parties' farming venture was over and during Lee's removal of his personal property from Hering Farms, announced his status as a partner with Haun and offered to personally pay a debt that the plaintiffs now set at almost $70,000.

Additionally, there is no basis for a finding of partnership by estoppel. The basis on which the court could determine the existence of a partnership by estoppel is set out in N.C. Gen. Stat. § 59-46(a), which has been construed by the North Carolina appellate courts to establish that

> [t]he essentials of equitable estoppel or estoppel *in pais* are a representation, either by words or conduct, made to another, who reasonably believing the representation to be true, relies upon it, with the result that he changes his position to his detriment. . . . It is essential that the party estopped shall have made a representation by words or acts and that someone shall have acted on the faith of this representation in such a way that he cannot without damage withdraw from the transaction.

7

Volkman, 268 S.E.2d at 267 (internal citations omitted). Lee's overall conduct and typical activities are not in dispute. He dealt with the day-to-day operations of the venture and communicated frequently with Haun. That conduct, in and of itself, does not form the basis for a finding of partnership by estoppel.

The plaintiffs assert, however, that statements made by Lee led them to believe that he was in a partnership with Haun. Both William and Dwayne Hering testified that when they spoke to Lee about the spring 2007 shortfall, he said that he would, himself, "make sure it was taken care of." When this representation was made is unclear, because the testimony of William and Dwayne Hering place this remark at various times. Between them, the Herings testified that Lee said he would "take care of" the shortfall during late spring of 2007, during the fall of 2007, during January of 2008, and during June of 2008. The court cannot discern from the testimony whether the plaintiffs claim that Lee said this at least four times, or whether the plaintiffs are simply confused as to when this remark was made. In any event, for the reasons that follow, the timing and frequency of this remark proves to be of no import.

The court finds that at some point, Lee made a comment along the lines of "I'll take care of it myself" and, further, that such statement does not support a finding of partnership by estoppel. First, the Herings' own testimony places the comment in the context of the Herings' request that Lee prompt Haun to address their claim for past due monies, and to pay the amounts they believed were owed. Lee testified that he often served as the conduit for communications between the Herings and Haun, and he denied that he told the Herings that he was Haun's partner and would, if necessary, personally pay the amounts they claimed were owed. The court accepts Lee's testimony on this

8

point and finds it far more credible that Lee was merely offering to ensure that the matter was resolved.

More importantly, the plaintiffs introduced no evidence to show that they reasonably relied on the comment and then, on that basis, undertook some action to their detriment. The burden was on the plaintiffs to establish those elements, and they did not. The court concludes that Lee was not a partner in Five Seasons Farm and that there is no basis on which to attribute any liability to him. The plaintiffs' claims against Lee will be dismissed.

2. <u>Statute of Frauds</u>

The statute of frauds, as codified in the North Carolina General Statutes, establishes the following:

> Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made *between the parties* and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

N.C. Gen. Stat. § 25-2-201(1) (emphasis added). The defendants contend that their unwritten agreement, as its terms are alleged by the plaintiffs, fails to satisfy the requirements of the statute of frauds. Defendants Haun, Lee, and Five Seasons Farm are the parties against whom enforcement is sought, and it is undisputed that plaintiffs cannot produce any contract for sale or other writing signed by those parties.

There is a more preliminary question, though: Are the plaintiffs trying to enforce a "*contract for sale . . . between the parties*?" Paragraph 7 of the plaintiffs' complaint alleges that "[t]he plaintiffs sold agricultural products and provided other goods and services to the defendants on

credit on an open account." But the testimony regarding the arrangement between the parties after the 2006 seasons does not support a finding that there was a sale of goods between the plaintiffs and the defendants. Witnesses for both sides testified that the arrangement was for Haun to be primarily responsible for greenhouse costs, seeds, and boxes; for the Herings to cultivate the crops and arrange labor as needed; and for Haun to arrange transport of the crops for sale at markets in the District of Columbia, New York, and Toronto. The parties would then account for their expenses and split the net profits evenly. Pls.' Post-trial Mem. on Evidence & Law at 2; Defs.' Post-Trial Brief at 2.

Plaintiffs contend that when Haun asked Hering to cultivate more land for increased crop production, Hering insisted on a change to their deal, "including a 'full accounting' sixty days after the final invoice." Pls.' Post-Trial Mem. at 2. The evidence conflicted on that point, but the more telling point is this: There is no evidence that either party contemplated a sale of crops *between them*. Both parties testified to an agreement to divide profits from the sale of crops to *third parties*, not from a sale of crops from the plaintiffs to the defendants. The court finds, based on the evidence presented, that this was in fact the underpinning of the parties' business arrangement. Where the parties really disagree, as is more fully discussed below, is how and when those profits were to be calculated.

In conclusion, the evidence indicated that the parties' business arrangement was more akin to a joint venture. The testimony made clear that in every growing season after 2006, both parties contemplated an equal distribution of profits. Profit can only be derived once a sale has occurred and payment has been received. The sale in question is the sale to a third party, not to Haun or Five Seasons Farm. Without a sale *between the parties*, as expressly provided by the statute, the statute of frauds is inapplicable and cannot be asserted as a defense to the plaintiffs' claim.

3.  Contractual Terms

It is "well settled" under North Carolina law that a "valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." Maxwell v. Michael P. Doyle, Inc., 595 S.E.2d 759, 763 (N.C. Ct. App. 2004), quoting Northington v. Michelotti, 464 S.E.2d 711, 714 (N.C. Ct. App. 1995). Whether there is mutual assent and a "meeting of the minds" is a question for the trier of fact. See, e.g., Creech v. Melnik, 495 S.E.2d 907, 912 (N.C. 1988). In this case, the testimony made clear that each party had a different expectation of how and when the price would be set. For some seasons, the parties were content with their *results*, and thus with their unwritten agreement. As production increased but return diminished, the arrangement became unsatisfactory, and the Herings determined that their expectations were no longer met. Only at that time, it appears, did the parties focus on all the terms of their agreement.

Because they are the plaintiffs, the burden of proof falls to the Herings to establish the existence and terms of the contract. "To be enforceable, the terms of a contract must be sufficiently definite and certain." Brooks v. Hackney, 404 S.E.2d 854, 857 (N.C. 1991), quoted in Maxwell, 595 S.E.2d at 763. "In proving a breach of contract, the plaintiff must show '(1) existence of a valid contract and (2) breach of that contract.'" Harrison v. Wal-Mart Stores, Inc., 613 S.E.2d 322, 327 (N.C. Ct. App. 2005) (citations omitted).

The court has considered all of the evidence and concludes that the plaintiffs have not discharged their burden of proving the terms of the contract and, therefore, the defendants' alleged breach of those terms. Plaintiffs maintain that the price was to be calculated by using the "market price" called out by defendant Lee as the trucks were loaded. However, plaintiffs also maintain that *profits* were to be split. Those positions are inconsistent. Profit is not the result of an estimated

11

market price, but the result of actual monies received for goods minus associated expenses. Plaintiffs produced no evidence of the actual prices obtained for the crops and therefore cannot prove what their one-half share of those revenues minus expenses would have been. Plaintiffs did not introduce accounting sheets from the seasons when there was no disagreement as to payments, which may have shown what procedure on pricing had been consensually employed by the parties.

The court points out that the testimony of the defendants concerning the terms of the agreement is similarly inconclusive, and unpersuasive. On the defendants' end, there was inconsistent testimony regarding whether the price was set at the time of the sale to a wholesaler, or at the time of the sale to the ultimate retailer. There simply was no meeting of the minds on pricing and, therefore, the plaintiffs cannot prevail.

## CONCLUSION

Both the plaintiffs and the defendants elected to engage in a business venture together based on unwritten understandings and expectations which, of course, changed in response to the varying success of their crop sales. Neither party can establish that there was a specific agreement in place, and returning to the unwritten starting point of their understanding is impossible. Whatever the deal was, there was no evidence presented to the court by which the court could find that there was a meeting of the minds as to the details of it. The arrangement "worked" only in the sense that neither the plaintiffs nor the defendants paid serious attention to it during the time that it produced satisfactory income. They paid attention only when the income ran short. That choice, unfortunate as it was, cannot be undone by any court. Instead, at this juncture, all that the parties and the court can do is apply clear rules of law to murky facts. This results in the court's determination that the

plaintiffs failed to discharge their burden of proof on the terms and alleged breach of a contract between the parties.

The claims against defendant David Lee are hereby dismissed and judgment shall be entered in favor of the defendants.

**END OF DOCUMENT**